Filed 10/11/24  P. v. Andrews CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARCQUAL DEAN ANDREWS,<br><br>    Defendant and Appellant. | F087066<br><br>(Super. Ct. No. BF194735A)<br><br><br>**OPINION** |

<u>THE COURT</u>\*

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

# INTRODUCTION

Marcqual Dean Andrews, appellant, was convicted of violating a restraining order, making criminal threats, corporal injury to a spouse, vandalism, violation of a court order, resisting arrest and carjacking. He was sentenced to 27 years eight months in prison.

On appeal, appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. Appellant did not file a supplemental brief on his own behalf. We affirm.

# STATEMENT OF FACTS

K.P. had known appellant for 10 years, and in June 2022, married him in a religious ceremony.[1] The beginning of the marriage was great, and K.P. described appellant as "a blessing." However, two or three months after being married, K.P. began to notice things missing from her apartment such as her cell phones, tablets, her children's games and business products, and found out appellant had a drug problem. When K.P. asked appellant about the missing items, he would get violent with her and "put his hands" on her. K.P. called the police, and ultimately got her first restraining order against appellant on April 25, 2023.

On May 5, 2023, appellant was convicted of violating the April 25, 2023 restraining order. On May 8, 2023, K.P. was sitting in her car smoking and listening to music, with her window down, when appellant came "out of nowhere." He started attacking K.P. and punched her in the head and face. K.P. got out of the car and began fighting appellant, who threw her to the ground. Appellant then jumped into the car and drove off.

K.P. called the police, got into her second vehicle, and followed appellant to a nearby park, then several streets over near some apartments. When police arrived, they

---

[1]     The marriage was not legally recorded, although K.P. stated she considered herself married to appellant.

2.

were able to locate K.P.'s vehicle, but not appellant, who K.P. said left on foot. Due to not having a copy of the keys to her first car, K.P. was not able to recover the car that day. When she did get the keys, the car was gone, and she did not recover it until May 16, 2023. The car was ultimately found near appellant's grandmother's house.

On May 10, 2023, at around 2:00 a.m., appellant tried to kick K.P.'s front door down. Appellant was outside of K.P.'s apartment, yelling, making noise and calling her phone. Appellant also slashed the tires on K.P. and her father's cars. K.P. called the police. When they arrived, K.P. went outside and observed all four tires on her car, and three of the tires on her father's car were slashed and flat. K.P. spent $700 to replace the tires.

That morning, K.P. also observed appellant stuff candy into her car's tank, and she believed the sugar caused damage to her car. It cost her $520 to have the gas tank and other car components cleaned and repaired. Appellant continued to call and text K.P. throughout the morning, telling her that he was watching and he would come to her house and kill her and her family. Then around 7:00 a.m. or 8:00 a.m., appellant broke one of the windows in her apartment, which cost $1,000 to replace.

On May 16, 2023, appellant was standing below K.P.'s bedroom window, talking to her, while K.P. was telling him to go away. K.P.'s father walked up and began arguing with appellant, and appellant pulled a gun out and was telling K.P. he was going to shoot her. K.P. and her father called the police, but appellant continued to say that he was going to kill K.P. K.P. testified she was so tired of his behavior she told him to just shoot her. After K.P.'s father left to call the police, appellant continued to tell K.P. he was going to kill her before the police arrived.

Once officers arrived, appellant had fled and was located hiding between some bushes. He ignored officers' commands and had to be pulled out from beneath the bushes. Officers found keys to a vehicle later identified as belonging to K.P. inside appellant's pocket, and a pellet gun on the grass near the bushes. Officers believed the gun was real until they picked it up. Officers arrested appellant.

3.

While in custody, appellant continued to call and send letters to K.P., who still had an active restraining order against appellant. In a letter dated June 9, 2023, appellant claimed he loved K.P. and was sorry she felt otherwise. In a letter dated July 3, 2023, appellant called K.P. the "foulest female" he had ever met, then talked about check fraud and wrote " 'I'm pretty sure you know where I'm going with all this. Please don't make me do it.' " K.P. testified she interpreted appellant's statements as a threat not to go to court.

A letter dated July 4, 2023, had a picture of the homicidal horror movie character "Chucky" drawn on the envelope. K.P. testified she took the drawing to mean that appellant was threatening to kill her. In the letter, appellant wrote " 'I refuse to let you and your dad send me away,' " and " 'I guess I'll have to send you all to the feds first. That's only [if] you all keep coming to court on me.' " Appellant threatened K.P. that he would send letters to the federal government which would implicate K.P. in a crime involving checks, and said, " 'I wrote the letters real good. I'm just waiting to see what you all want to do. If you all come to my next court date on the 14th, I'll send them off immediately. I have someone who will call them to speed up the process.' "

K.P. also accepted over 50 jail calls from appellant. In one call, K.P. called appellant a rat and said she would "have something" for appellant if he got out of custody. K.P. explained she meant she was willing to do anything to protect herself, including kill appellant if he tried to kill her.

## PROCEDURAL HISTORY

On August 14, 2023, the Kern County District Attorney's Office filed an amended information charging appellant with violating a restraining order (Pen. Code,[2] § 646.9, subd. (b); count 1), three counts of making criminal threats (§ 422; count 2, 3, 8),[3] willful

---

[2]     Undesignated references to code are to the Penal Code.

[3]     Count 2 alleged threats made against K.P. on May 8, 2023, count 3 alleged threats made against K.P. on May 16, 2023, and count 8 alleged threats made against K.P. on May 16, 2023. The dates in count 2 were amended at trial to May 9 and 10, 2023, and

infliction of corporal injury on a spouse resulting in a traumatic condition (§ 273.5, subd. (a); count 4), felony vandalism in excess of $400 (§ 594, subd. (b)(1); count 5), violating a court order to prevent harassment (§ 273.6, subds. (a), (d); count 6), carjacking (§ 215, subd. (a); count 7) and misdemeanor resisting, delaying or obstructing a peace officer (§ 148, subd. (a)(1); count 9).

The amended information alleged appellant suffered a prior conviction on February 10, 2015, for violating section 212.5, subdivision (c), second degree robbery. As to counts 1, 2, 3, 4, 5, 6, and 8, the amended information alleged the prior conviction qualified as a prior strike within the meaning of sections 667, subdivisions (c) through (j), and section 1170.12, subdivisions (a) through (e). As to counts 2, 3, 7, and 8, the amended information additionally alleged the conviction qualified as a serious felony pursuant to section 667, subdivision (a). As to counts 1 through 8, the amended information alleged nine aggravating factors. (Cal. Rules of Court, rule 4.421.)[4, 5] No aggravating factors or enhancements were alleged as to count 9.

---

the alleged victim in count 8 was amended to K.P.'s father at trial to reflect the evidence presented and prevent confusion.

[4]     All further references to rules are to the California Rules of Court.

[5]     The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)), appellant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process (rule 4.421(a)(6)), the manner in which the crime was carried out indicates planning, sophistication, or professionalism (rule 4.421(a)(8)), the crime involved an attempted or actual taking or damage of great monetary value (rule 4.421(a)(9)), appellant has engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)), appellant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)), appellant has served a prior term in prison or county jail under section 1170, subdivision (h) (rule 4.421(b)(3)), appellant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed (rule 4.421(b)(4)), and appellant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory (rule 4.421(b)(5)).

5.

On August 25, 2023, appellant made a *Marsden*[6] motion, which was denied following a hearing. On August 10, 2023, appellant stipulated to his violation of postrelease supervision being heard concurrent with the instant case. The violation was not stated in front of the jury, and the trial court granted a motion not to mention appellant's supervision status to the jury.

On August 14, 2023, the trial court granted a motion to bifurcate the priors and aggravating factors. Following the jury trial on the substantive charges, appellant personally waived his right to a jury trial on the priors and aggravating factors. The court advised appellant as follows:

> "There are some allegations related to some prior conduct that also related to what we call aggravating factors, which are to be considered at the time of sentencing if there's a felony conviction.
>
> "You have a right to have the same jury that heard the substantive charges hear your aggravating factors as well as any prior allegations. You can also waive that right and have the Court make those determinations, or you can make an admission to any or all of the priors and/or aggravating factors.
>
> "Your attorney has advised me you had an opportunity to discuss that with her and that you're prepared to waive your right to jury trial and exercise your right to what we refer to as a court trial as to priors and aggravating factors; is that correct?"

Appellant responded, "Yes," nodded in the affirmative and stated he had no other questions about his right to a jury trial on the priors and aggravating factors.

*Trial Objections*

On cross-examination of Officer Jose Gamboa, appellant elicited the following line of questioning:

> "[DEFENSE COUNSEL]: When [you're] investigating a matter like this, and you have in your mind a potential weapon, and a person is finally detained, you asked the individual questions, correct?

---

[6]     *People v. Marsden* (1970) 2 Cal.3d 118.

"[GAMBOA]:  Correct.

"[DEFENSE COUNSEL]:  And part of that is to try to determine what actually occurred, correct?

"[GAMBOA]:  That's correct.

"[DEFENSE COUNSEL]:  Because up until that point, up until the point that [appellant] was detained, you only had one very specific version of the events, correct?

"[GAMBOA]:  Well, what was provided to us, yes.

"[DEFENSE COUNSEL]:  And one of the things you tried to investigate to accurately get all the information, is trying to determine why an individual would even put themselves in the position like what is commonly referred to [as] a 148, which is resisting or obstructing?

"[GAMBOA]:  Correct.

"[DEFENSE COUNSEL]:  And isn't it true that in response to that, part of the investigation, [appellant] advised you—"

The People objected on hearsay grounds, and the objection was sustained. Following the close of evidence, the trial court revisited the objection, and noted that it did not believe there was a viable exception to the hearsay rule.  Appellant argued the statements spoke to his state of mind at the moment, with respect to resisting arrest and explaining why he ran, and his belief that the keys in his pocket were to a car he owned. The People argued there was no party opponent exception to hearsay available to appellant because he was the one trying to introduce his own statements, and there was no hearsay exception which would allow the statements to come in unless appellant testified.

The trial court sustained the objection.  The court noted that while the statements would be relevant, appellant would need to take the stand and be subject to cross-examination for the statements to be admissible.  The court found the statements were self-serving hearsay and did not qualify under one of the recognized hearsay exceptions.

7.

Appellant requested a jail phone call between himself and K.P. be played to the jury. In the call, K.P. stated, " 'I'm going to tell everyone that somebody from the Rolling 60s is snitching.' " The implication was that appellant was a member of a gang called the Rolling 60s, and appellant argued that K.P. was threatening him with the statement, and would send individuals from a gang to hurt him. Appellant further argued that the statement was direct impeachment of K.P.'s prior testimony that she did not threaten to harm appellant if he testified against her.[7]

The People objected to the statement and argued it did not qualify as direct impeachment. The People further argued that the instant case did not have any gang charges, and introducing gang evidence would be highly problematic and especially prejudicial.

The trial court agreed with the People. The court ruled that the statement was vague and would require explanation to help the jury understand its significance. As a result, it would potentially require the introduction of completely collateral evidence related to things like gang culture, and would unnecessarily prolong the trial, confuse the jury and create undue prejudice. The trial court exercised its discretion under section 352 and found the probative value was substantially outweighed by the potential for prejudice, jury confusion and undue consumption of time.

*Jury Instructions and Jury Questions*

In addition to the requested instructions, the trial court gave the attempt instructions as to counts 2 and 3, and the misdemeanor lesser included instruction of domestic battery as to count 4. The court declined to give the lesser included instruction on simple assault and simple battery, because the court reasoned there was not a dispute as to a qualifying relationship between appellant and K.P.

---

[7] On cross-examination, appellant's counsel asked, "[I]sn't it true that you threatened [appellant's] life by sending gang members if he testified—[¶] … [¶]—against you?" K.P. responded, "No."

On August 22, 2023, during deliberations, the jury asked for clarification on counts 2 and 3, and whether the counts were for the same incident. The trial court responded that count 2 related to conduct alleged to have taken place on or about May 9 and May 10, 2023, and count 3 related to conduct alleged to have taken place on May 16, 2023. The court referred the jury to CALCRIM No. 3500 in the jury instruction packet. On August 23, 2023, the jury requested a readback of K.P.'s testimony mentioning appellant to be gang affiliated.[8]

*Verdict and Sentence*

On August 23, 2023, the jury found appellant guilty as charged on counts 1, 3, and 5 through 9. The jury found appellant guilty of the lesser included offense of attempted criminal threats in violation of sections 664 and 422 as to count 2, and the lesser included offense of misdemeanor domestic battery in violation of section 243, subdivision (e)(1) as to count 4.

The trial court found true the allegations pursuant to rules 4.421(a)(6) and 4.421(b)(1) through (5) true as to each felony count. The court found the allegation pursuant to rule 4.421(a)(1) true as to counts 1, 5, 6, and 8; the allegation pursuant to rule 4.421(a)(8) true as to each felony count except for counts 7 and 8; and the allegation pursuant to rule 4.421(a)(9) true as to count 7 only. The court further found true appellant suffered a prior serious or violent felony conviction pursuant to section 667,

---

[8] K.P. testified about what appellant's messages meant to her. She stated "[t]hat he was going to do the things that he stated. Like how he's saying blaming me 6-0. He's talking about his gang. He's saying 'cuz,' he's saying his gang because he's a crip. Rolling 60s, he's saying 6-0. So I'm taking it very serious. You're saying these things and you're putting it on your hood, your gang, whatever you feel you represent, so yes." The trial court then admonished the jury, "[t]he last answer will be allowed, but I want to make sure it's understood, again, this goes toward the witness's state of mind. It's not offered for the truth of the matter contained in that statement but it does go to the state of mind of the listener, in this case, [K.P.]"

subdivision (e) and a prior serious felony conviction pursuant to section 667, subdivision (a).

On September 20, 2023, appellant filed a *Romero*[9] motion requesting the trial court dismiss the strike or the five-year enhancement pursuant to section 667, subdivision (a). Appellant noted the probation report filed on September 15, 2023, recommended a sentence of 27 years eight months. Appellant argued that even if the *Romero* motion is granted, he would still serve a lengthy sentence of 11 years eight months.

On October 16, 2023, the People filed a sentencing brief opposing appellant's request. The People argued appellant fell within the spirit of the "Three Strikes" law, had committed multiple felonies and misdemeanors since his 2015 conviction for robbery, and dismissing the five-year enhancement would endanger public safety. The People requested a sentence of 30 years four months.

The trial court ruled as follows.

> "There is a suggestion that somehow there is a mental health issue as well as a childhood trauma issue that impacted [appellant] and should be considered by the Court as mitigation in this particular case. The Court did not hear any evidence during the trial regarding any sort of mental health factors from, for example, a mental health provider, a psychiatrist, or a psychologist who perhaps has evaluated [appellant] and has an opinion in that regard. Nor did I hear any evidence that—during the trial that somehow some sort of childhood trauma played a significant role and was connected to the—the commission of the offenses to which [appellant] was found guilty. Without what I believe is necessary to have some sort of competent evidence of those factors, it's difficult for the Court to place much, if any, weight in that situation, combined with the continued assertions that the complaining witness or victim in this situation was fabricating testimony and the circumstances of what happened, which I don't necessarily think is consistent with the other evidence presented during the course of this trial. I believe I am left with a more traditional and conventional *Romero* analysis looking at the factors such as the

---

[9] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

criminal history, the circumstances of the present offense, [and] the overall punishment that would be contemplated and necessary if I were to deny the grant of the *Romero*.

"In this situation, having reviewed the moving papers, including the probation officer's report, I'm looking at a criminal history that began when [appellant] was, in fact, a juvenile back in 2006 and has continued fairly consistently to the present offenses. There are consistent circumstances in which there appears to be domestic violence dating back at least as far as 2011 where he was convicted in August of 2011 of a violation of … [s]ection 236, commonly referred to as false imprisonment. He was sentenced to felony probation including domestic violence counseling.

"There are other convictions that give the Court concern, including misdemeanor violation of … [s]ection 422, along with a vandalism conviction from October of 2013. There are obviously drug related offenses. In 2014, there is the strike allegation pursuant to … [s]ection 212.5[, subdivision] (c), where he was convicted. He did initially receive a probationary sentence. I believe the sentence was actually 241 days which most likely was credit [for] time served at the time of sentencing. There were several violations that ultimately led to a two-year prison commitment.

"There have been prior felony convictions since that particular conviction, including other offenses, felony offenses involving crimes of violence, including a [section] 245[, subdivision] (a)(4) conviction from 2020, and most recently prior to this, another domestic violence related situation from April 22, 2023. And the Court heard testimony about the fact that it was almost immediately upon his release from that circumstance that these new situations of violence and conduct began and continued until his arrest.

"Giving all the consideration that the Court is allowed, it is the Court's measured opinion that while the Court does recognize I have the discretion to strike the … [s]ection 212.5 allegation prior, pursuant to [section] 667[, subdivision] (e) as well as under [section] 667[, subdivision] (a), I do not believe it would be within the spirit of the *Romero* line of decisions nor the Three Strikes law to strike that strike for purposes of sentencing today.

"I note that the circumstances in this situation were an escalation of prior domestic violence situations involving the same victim, and while the Court is not here to comment on the health of the relationship that was the underlying circumstance that created the domestic relationship, the Court is

here to evaluate what happened in this situation. And I will note that it appears to the Court and based on the jury's guilty verdicts, it was not a single incident that led to [appellant] being before the Court today. It was a series of incidents, including an incident with what appeared to be, although I think it eventually was determined to be akin to a firearm, but it did appear to be a firearm. That increases the risk to public safety. It increases the risk of danger to others, not just from [appellant] but from others that might respond to being confronted with, for all intents and purposes, what appears to be an actual, functioning firearm."

The trial court declined to dismiss appellant's prior strike conviction or the section 667, subdivision (a) five-year enhancement. The court sentenced appellant to the upper term of nine years on count 7, doubled to 18 years due to appellant's prior strike, with an additional five-year enhancement pursuant to section 667, subdivision (a). The court further sentenced appellant to eight months on count 2, and 16 months on counts 3, 5, and 8—one-third the middle term as to each count, to run consecutively. The court sentenced appellant to the upper term of eight years on count 1, and the upper term of six years on count 6, stayed pursuant to section 654. Finally, the court sentenced appellant to one year in jail on counts 4 and 9, misdemeanors, to run concurrently. Appellant was sentenced to an aggregate term of 27 years eight months in prison.

The trial court assessed a $300 restitution fee, a $300 parole revocation fine, a $360 court security fee, and $270 in conviction assessments. The court awarded appellant a total of 185 days' presentence credit. On October 23, 2023, appellant filed a timely notice of appeal.

## DISCUSSION

"[T]he constitutional right to assistance of counsel entitles an indigent defendant to independent review by the Court of Appeal when counsel is unable to identify any arguable issue on appeal. California's procedure for securing this right requires counsel to file a brief summarizing the proceedings and the facts with citations to the record, and requires the appellate court to review the entire record to determine whether there is any arguable issue." (*People v. Kelly* (2006) 40 Cal.4th 106, 119.)

"[A]n arguable issue on appeal consists of two elements.  First, the issue must be one which, in counsel's professional opinion, is meritorious.  That is not to say that the contention must necessarily achieve success.  Rather, it must have a reasonable potential for success.  Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109.)

We have independently reviewed the record on appeal and are satisfied no arguable issues exist.  (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441–443.)

## DISPOSITION

The judgment is affirmed.